## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

OFFICE AND PROFESSIONAL      )
EMPLOYEES INTERNATIONAL UNION,)
LOCAL 494, *et al.,*                )    Case No.  2:14-cv-14868-DPH-EAS
                                     )
             Plaintiffs,       )      District Judge Denise Page Hood
                                     )
                                     )
             v.                 )
                                     )
INTERNATIONAL UNION, UNITED    )
AUTOMOBILE, AEROSPACE AND     )
AGRICULTURAL IMPLEMENT        )
WORKERS OF AMERICA,              )
                                     )
             Defendant.        )

## FINDINGS OF FACT,
## CONCLUSIONS OF LAW AND ORDER

       This matter is before the Court on the parties' motion for final approval of a

class action settlement resolving plaintiffs' complaint filed on December 22, 2014.

Based on the facts and conclusions stated herein, the Court GRANTS the motion,

and orders as follows: [1]

---

[1]  Except where context indicates otherwise, capitalized terms are defined as in the
Settlement Agreement (Doc. # 19-1).

## I.    FINDINGS OF FACT

### A.    <u>The Parties and the UAW Retiree Health Benefits Programs</u>

1.    Defendant United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW") is a labor union that represents employees in collective bargaining with their employers.  (Supplemental Declaration of Joseph Stackpoole (Doc. # 33) ¶ 3.)

2.    As of the end of 2014, the UAW had approximately  403,466  active members. This membership total constitutes a sharp decline from the UAW peak membership total of 1,530,870 in 1969.  (*Id.*)

3.    The UAW employs approximately 717 active staff employees, approximately 580 of whom are represented by a union, including Plaintiff Office and Professional Employees International Union, Local 494 ("OPEIU"); Plaintiff Staff Council of International Representatives ("Staff Council"); International Union, Security, Police and Fire Professionals of America Amalgamated Local 119 ("SPFPA"); Staff Lawyers Union ("SLU"); and Newspaper Guild/ Communications Workers of America Local 34022 ("Guild") (collectively the "Unions").  (*Id.* ¶ 4.)

4.    For employees who were hired before specified dates in 2008 and who satisfy the age and service eligibility criteria specified in its Staff Manual and applicable collective bargaining agreements, the UAW provides retiree health care

benefits as set out therein.  (*Id.* ¶¶ 5-7 and Exs. A, B thereto.)  The UAW provides retiree health care benefits to approximately  2,000  retirees and surviving spouses, and  more than 400 active or inactive UAW employees (as well as their spouses or dependents) could become eligible for retiree health care benefits under the UAW program in the future.  (*Id.* ¶ 10.)

5.    In addition to paying the current costs of its retiree health care benefits program, in 2007 the UAW established and began contributing to an internal trust – the UAW Retiree Health and Welfare Benefits Trust ("UAW Retiree Trust") – to fund in part the future costs of the retiree health care program.  (*Id.* ¶ 11.)

6.    The Retiree Medical Benefits described in the Staff Manual, and the eligibility criteria stated in the Manual, were adopted through collective bargaining between the UAW and Staff Council.  Except as indicated in paragraph  7 of these findings (and except for certain variations due to the differing effective dates under the various agreements), the same arrangements have been adopted for members of the other Unions that represent UAW employees, and the UAW has applied those same terms to its officers, directors and other UAW employees not represented by one of the Unions.  (*Id.* ¶ 8.)

7.    Prior to 2008, all of the UAW's active employees and retirees were provided substantially the same retiree health care benefits, subject to the specific eligibility requirements applicable to each group of employees and retirees and

3

some minor variations in benefits.  The 2010 collective bargaining settlement between the UAW and Staff Council provided for certain changes in retiree health care benefits – including some benefit reductions and new cost sharing – generally applicable for employees retiring after January 1, 2010 (the "2010 Benefit Modifications").  (*Id.* ¶ 9; Ex. A  to Initial Declaration of Joseph Stackpoole (Doc. # 10-6) at A-22-23 and J-1-2.)  Except for certain variations as to effective dates, these changes also were adopted for all other UAW employees, either in collective bargaining or by application to UAW staff employees not covered by collective bargaining agreements.  (*Id.*)

8.     In the 2012 collective bargaining settlement, the UAW and Staff Council adopted, effective August 1, 2013, certain improvements in retiree health care benefits for Staff Council employees who had retired after January 1, 2010 or would retire in the future and who had at least 15 years of service credit (or 20 years for certain benefits) (the "2012 Benefit Modifications"). (Supp. Stackpoole Decl. ¶ 9; Ex. B to Initial Stackpoole Decl. at 3-4.)  The 2012 Benefit Modifications also were made applicable to members of the UAW staff represented by the Guild and the SLU, and to unrepresented staff employees. (Supp. Stackpoole Decl. *¶* 9)  The 2012 Benefit Modifications were not adopted for employees represented by OPEIU and SPFPA.  (*Id.*)

4

### B.      The Dispute Concerning the 2013 Benefit Modifications

9.      In 2013, the UAW made modifications to the prescription drug, dental and major medical benefits provided to retirees and surviving spouses (the "2013 Benefit Modifications"), and also made those changes applicable in retirement to UAW active employees who could be eligible for retirement benefits in the future. (*Id.* ¶ 12;  Ex. C to Initial Stackpoole Decl.)   These changes were designed to reduce the UAW's costs without a substantial impact on benefits, and also to make certain improvements in retiree benefits.  (*Id.*) The principal changes consisted of (i) inclusion of certain prescription drug utilization tools, (ii) new incentives for the use of generic drugs over brand name drugs, and (iii) reductions in the percentage of costs borne by the UAW for dental providers outside an established PPO network.  (Ex. C.)

10.      Both the OPEIU and the Staff Council objected to the 2013 Benefit Modifications and subsequently filed group and policy grievances alleging that the changes – which, as to current retirees and their surviving spouses, had been made without agreement by those unions – violated their collective bargaining agreements with the UAW.  (Supp. Stackpoole Decl. ¶¶12-13, and Exs. D and E to Initial Stackpoole Decl.)  The UAW responded that the benefit modifications were permissible and that the dispute was not subject to arbitration.  (Exs. D, E.)

5

11.     Shortly after the announcement of the 2013 Benefit Modifications, the UAW, Staff Council, and OPEIU entered into substantive discussions regarding a possible settlement that would involve a restructuring of the UAW's retiree health care plans and programs through the creation of a voluntary employees' beneficiary association trust ("VEBA") funded by the UAW and administered by a committee with independent authority.  (Supp. Stackpoole Decl. ¶ 14.)  The concept of a retiree health care VEBA was familiar to the parties, because the UAW had over past decades negotiated numerous retiree health care VEBAs with employers of its members, including the largest such VEBA, the UAW Retiree Medical Benefits Trust, which provides retiree health care benefits for retirees of General Motors, Ford Motor Company and Chrysler.  (*Id.*)

12.     In its notice of the 2013 Benefit Modifications, the UAW Executive Board had stated that "the combination of health care inflation, a growing number of retirees, and declining membership [had] resulted in health insurance  becoming one of the UAW's largest expenses."  (Ex. C to Initial Stackpoole Decl.)  The discussions regarding the dispute therefore focused on the funding necessary to preserve the retiree health care benefits and the risk to retirees if those benefits remained largely unfunded.  (Supp. Stackpoole Decl. ¶ 14.)

13.     During those discussions, the UAW provided voluminous financial, actuarial, and benefit program data and documentation to Staff Council and OPEIU

and to a team of financial consultants, actuaries, and legal counsel those unions had retained.  (*Id.*; Settlement Agreement (Doc. # 19-1) at 8-9.)

14.    The discussions between the UAW, Staff Council and OPEIU resulted in a June, 2014 tentative agreement (the "MOU") to restructure the UAW's retiree health care plans and programs through the creation of an independent VEBA trust funded by the UAW.  (Supp. Stackpoole Decl. ¶ 15.)  The tentative agreement was ratified by Staff Council, OPEIU, and the other unions representing UAW employees, but was subject to negotiation of a final settlement agreement and to court approval with respect to current retirees and active employees who were not represented by unions.  (*Id.*)

### C.    Commencement of the Litigation

15.    Counsel for the OPEIU, David Fusco, contacted Class Counsel in this matter, David Cook, in August 2014, when it had become apparent that litigation would be necessary.  (Supplemental Declaration of David M. Cook (Doc. # 32) ¶ 12.)  After discussing the matter with Mr. Fusco, Mr. Cook and his firm determined that they were willing to become involved in the case.

16.    Mr. Cook and his firm were retained by three retired UAW employees who agreed to serve as class representatives:  Paula Young, a retired clerical employee of the UAW who was represented by the OPEIU while an active employee; Norman L. Bissell, Jr., a retired international representative who was

7

represented by Staff Council while an active employee; and David Curson, a

retired employee of the UAW who was not represented by a union while an active

employee.  (Complaint ¶¶ 8-10.)  By order filed April 22, 2015 (Doc. # 17),

plaintiff Young withdrew as a plaintiff and Elizabeth Manian, a retired clerical

employee of the UAW who was represented by the OPEIU while an active

employee (Doc. # 16) was substituted as a plaintiff and proposed class

representative.

17.    Class Counsel conducted an independent factual investigation and

legal analysis of the claims at issue in this case.  Class Counsel were provided

access to the information that had been given to the Unions and to the Staff Manual

and other relevant documents describing UAW's retiree health care program and

agreements with respect to the program over the years.  Class counsel also were

provided with analyses and opinions of the Unions' experts, actuarial reports

regarding the cost and value of the retiree health benefits members of the class are

receiving, and other relevant documents.  (Supp. Cook Decl. ¶ 13; Settlement

Agreement ¶ 3.)

18.    Upon being retained by the Class Representatives, Class Counsel

began negotiating on behalf of the Class for settlement terms that were satisfactory

and acceptable to the putative Class Representatives.  (Supp. Cook Declaration ¶

14.)  After continued negotiations, the UAW, the Unions and the Class

8

Representatives entered into the proposed Settlement Agreement, resolving among the parties, subject to Court approval, the retiree health care benefits claims, including claims of the Class Representatives and the proposed Class Members.

19.     Plaintiffs filed their complaint in this action on December 22, 2014, asserting claims under Section 301 of the Labor Management Relations Act of 1947, as amended (the "LMRA"), 29 U.S.C. § 185, and Sections 501(a)(1) and (3)(B) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1132(a)(1) and (3)(B).

20.     On January 30, 2015, the individual plaintiffs moved for class certification (Doc. # 8) and the parties jointly moved for an order preliminarily approving the proposed settlement, approving proposed notice to the class, and setting the date for a class settlement fairness hearing.  (Doc. # 10.)

**D.    The Settlement Agreement**

21.     The Settlement Agreement provides for the establishment and funding of an independent VEBA trust fund to provide health care benefits to eligible current and future UAW retirees, surviving spouses and dependents.  Upon the establishment of the VEBA, the UAW will have no further obligation to provide health care benefits to its current or future retirees.

22.     The Settlement Agreement provides that, as funding for the retiree health care benefits to be provided by the VEBA, the UAW will contribute to the

9

VEBA approximately $346 million, with that figure to be adjusted to account for any amounts paid by the UAW or by its sponsored employee benefit plans to cover the costs attributable to retiree medical benefits provided to Class Members during the period commencing January 1, 2013 and ending on the date that the VEBA is implemented, plus interest using an annual rate of 6.5 percent.  (Settlement Agreement ¶ 6.)

23.     In addition to the $346 million, as thus adjusted, the Settlement Agreement provides that the UAW will contribute to the VEBA an additional $8.5 million to offset the cost of administering those benefits, and that the UAW also will bear reasonable costs of the start-up of the VEBA.   (*Id.* ¶¶ 9-10.)

24.     Toward those contribution amounts, within 10 business days after Court approval of the settlement and the exhaustion of any appeal period, the UAW will contribute $85 million plus the assets of the existing UAW Retiree Trust, approximately $158 million.  (*Id.* ¶ 6(C); Supp. Stackpoole Decl. ¶ 11.)  The total initial funding, therefore, will be approximately $243 million ($85 million plus $158 million).  The remaining contributions, with interest, will be made ratably over the next 15 years in quarterly installments.  (Settlement Agreement ¶ 6(D).)

25.     The VEBA will be administered by an eight-person Committee consisting of four Independent Members, one of whom will serve as the Chair, two

Staff Council-appointed Members, one OPEIU-appointed Member, and one UAW-appointed Member.   (Trust Agreement (Doc. 19-1) § 9.01.)  Except in certain specified instances, the Chair's vote will be treated as two votes on matters determined by the Committee.  (*Id.* § 9.10.)  The Committee will have control over benefit decisions and will evaluate plan and benefit options for current and future VEBA beneficiaries, taking their needs and resources into account and making decisions solely in their interests under the terms of the agreement.  (*Id.* § 10.11.)  The Settlement Agreement provides that the initial Independent Members and Chair "shall be selected by mutual agreement by the UAW, Staff Council and OPEIU, and Class Counsel" and shall be designated in the order approving the settlement.  The parties have filed a Notice of Selection of Independent VEBA Committee Members, identifying the individuals who have been selected and providing their biographies.

26.     The funding amount to be contributed by the UAW has been projected, based on reasonable actuarial assumptions, to be sufficient to enable the VEBA to maintain existing levels of benefits for the lives of the Class Members. (Declaration of Brandon Conroy (Doc. # 10-8) ¶ 15; Supp. Cook Decl. ¶ 18.)  But that is not guaranteed, and it is possible that at some point benefits may be reduced. It is also possible that benefits could be improved.  The Committee will have the authority, in its sole discretion, to modify the benefits at any point if it determines

that this would be in the best interest of current and future VEBA beneficiaries. (Trust Agreement § 10.02.)

27.     The Settlement Agreement provides for the payment by the UAW of certain professional fees incurred by the Staff Council and OPEIU in negotiating and obtaining court approval of the Settlement Agreement and the MOU. (*Id.* ¶ 12.) The Settlement Agreement also provides that the UAW will support an application by Class Counsel, subject to the Court's approval, for reimbursement of reasonable non-duplicative attorney and professional fees and expenses based on hours worked in negotiating and obtaining court approval of the Settlement Agreement, not to include any upward adjustments, success fee, completion bonus or rate premiums. (*Id.*)

### E.     The Court's May 2015 Rulings as to Class Certification, Preliminary Approval of the Settlement, and Notice to the Class

28.     By order filed May 20, 2015 (Doc. # 21), the Court granted the individual plaintiffs' Second Amended Motion for Class Certification and Appointment of Class Counsel, certifying the following class under Fed. R. Civ. P. 23(b)(2):

> **1) Union Retirees Who Retired Prior to Ratification:** UAW Employees who, prior to June 2, 2014, had retired from the UAW with eligibility for Retiree Medical Benefits under the Prior UAW Plan, and who at the time of their retirement were in a bargaining unit represented by a Union, and their spouses, surviving spouses, and

12

dependents eligible for Retiree Medical Benefits under the Prior UAW Plan; and

**2)** **Surviving Spouses and Dependents of Union Employees Who Died Prior to Retirement and Ratification:** Surviving spouses and dependents entitled to Retiree Medical Benefits under the Prior UAW Plan as a consequence of the death of an employee who died prior to retirement from the UAW and prior to June 2, 2014 while still a UAW Employee in a bargaining unit represented by a Union, but in all cases only if the surviving spouse or dependent otherwise meet the requirements of the Prior UAW Plan for Retiree Medical Benefits; and

**3)** **Non-Union Employees and Retirees:** All UAW Employees, whether or not retired on June 2, 2014, who are eligible for Retiree Medical Benefits under the terms of the Prior UAW Plan and who (i) if not retired, were not in a bargaining unit represented by a Union as of June 2, 2014 or (ii) if retired, at the time of their retirement from the UAW prior to June 2, 2014 were not in a bargaining unit represented by a Union and, in both cases, their spouses, surviving spouses, and dependents eligible for Retiree Medical Benefits under the Prior UAW Plan; and

**4)** **Surviving Spouses and Dependents of Non-Union Employees Who Died Prior to Retirement:** Surviving spouses and dependents who, as of June 2, 2014, are entitled to Retiree Medical Benefits under the Prior UAW Plan as a consequence of the death of an employee who died prior to retirement from the UAW and prior to June 2, 2014 while a UAW employee not in a bargaining unit represented by a Union, but in all cases only if the surviving spouse met the requirements of the Prior UAW Plan for Retiree Medical Benefits.

29.     The May 20 order appointed as Counsel for the Class David M. Cook, Jennie G. Arnold, Claire W. Bushorn, and the firm of Cook & Logothetis, LLC.

30.     By order filed May 5, 2015 (Doc. # 20), the Court granted the parties' joint motion for preliminary approval of the proposed settlement.

31.     In that order the Court also approved the forms of Notice to the Class that had been proposed by the parties (Exs. 3 and 4 to that order), finding that they comply with the requirements of Rule 23(d), (e) and (h), and that they fairly present the terms of the Settlement Agreement and the Class Members' rights and responsibilities in the settlement approval process.

32.     The May 5, 2015 order also approved as reasonable the manner of providing notice that was proposed by the parties, and directed defendant UAW (i) to send the longer form of notice (Ex. 3 to Doc. # 20) by first class mail to Class member retirees and surviving spouses, and any Class members whose eligibility is not linked to a retiree or surviving spouse, and to active UAW employees who are eligible for retiree medical benefits upon retirement and who, as of June 2, 2014, were not represented by a union, and (ii) to publish the shorter form of the Notice (Ex. 4) in USA Today and the Detroit Free Press.

33.     The Court's order of May 5, 2015 set a hearing before the Court at 9:00 on July 10, 2015, to finally determine the fairness, reasonableness and

adequacy of the Settlement Agreement and to consider Class Counsel's motion for an award of attorney fees and expenses.

34.     The May 5 order provided, and the notices to the Class stated, that any class member who wished to object to the proposed settlement must file and serve his or her written objection by June 22, 2015, and that any class member who does not thus file and serve an objection will be deemed to have waived his or her objections and will be forever precluded from making any objections to the fairness or adequacy of the proposed Settlement Agreement or to Class Counsel's motion for an award of fees and expenses.  (Order filed May 5, 2015 (Doc. # 20) ¶¶ 4-5; Ex. 3 thereto (Doc. # 19-1) at 9-10.)

### F.    **Proceedings Subsequent to the May 2015 Orders**

35.     Notice was provided as the Court's order directed.  (Supp. Stackpoole Decl. ¶ 16; Declaration of Cory LeFebvre (Doc. # 30).  Only  seven notices  were returned as undeliverable, and upon re-mailing to  new addresses, only one notice remained undeliverable.   (LeFebvre Decl. ¶¶ 10-12.)

36.     On June 10, 2015, Class Counsel filed an amended  motion for an award of attorneys' fees and expenses for work on this matter through May 31, 2015.  (Doc. # 25.)  The motion states that a supplemental petition will be filed with respect to subsequent work.  The June 10 motion was posted on Class Counsel's website, as the notice had informed Class Members it would be.  (Supp.

Cook Decl. ¶ 21.)  On June 25, 2015, Class Counsel and the UAW submitted a

Joint Proposal for Resolution of the Amended Fee Motion (Doc. # 29).

37.   Only one individual filed an objection to the proposed settlement   No

objections to Class Counsel's motion for an award of fees and expenses were filed.

38.   On July 10, 2015, the Court conducted a hearing to determine whether

to approve the proposed settlement, and to consider Class Counsel's motion for an

award of fees and expenses.  The one class member who had filed an objection

requested and was granted the opportunity to clarify his objection in the hearing.

## II.   CONCLUSIONS OF LAW

### A.   <u>Jurisdiction</u>

1.   The Court has jurisdiction under Section 301 of the LMRA, 29 U.S.C.

§ 185, Section 502(e)(1) and (f) of ERISA, 29 U.S.C.  1132 § (e) (1), (f), and 28

U.S.C. §§ 1331 and 1337.

### B.   <u>Class Certification</u>

#### (1)   <u>Rule 23(a) Requirements</u>

2.   The class defined in FOF 28 above consists of over 2,000 members

(*see* FOF 4 ), making it "so numerous that joinder of all members is

impracticable."  Fed. R. Civ. P. 23(a)(1).  *See IUE-CWA v. Gen. Motors Corp.*, 238

F.R.D. 583, 591 (E.D. Mich. 2006) (Hood, J.), citing *Bittinger v. Tecumseh Prods.*

*Co.*, 123 F.3d 877, 884 n.1 (6th Cir. 1997) (objection to numerosity requirement in

1,000-member class was "frivolous"); *Reese v. CNH Am. LLC*, 227 F.R.D. 483, 486 (E.D. Mich. 2005) (certifying class of 1,400 retirees).

3.     The commonality requirement of Rule 23(a)(2) and the typicality requirement of Rule 23(a)(3) also are satisfied.  Although the benefits retirees currently are eligible to receive vary in some respects depending on the date of retirement and the bargaining unit, if any, of which the individual had been a member, the benefits are uniform in many respects, and the 2013 Benefit Modifications that gave rise to this litigation applied to all members of the Class. That being the case, commonality and typicality exist notwithstanding that retirees have been covered by different collective bargaining agreements ("CBAs") or, in the case of unrepresented employees, by benefit arrangements not contained in a CBA.  *See IUE-CWA,* 238 F.R.D. at 591-92, and cases cited therein.

4.     This case also satisfies Rule 23(a)(4)'s criteria for adequacy of representation:  "(1) [t]he representative must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute interests of the class through qualified counsel."  *IUE-CWA* at 592 (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976)). Here, as in *IUE-CWA*, "[t]he representatives in this case have the same common interest in protecting retiree health care benefits, and there is nothing to suggest that they do not or would not vigorously protect the interests of the class."  *Id.*

Furthermore, the lead Class Counsel retained by the Class Representatives and appointed by the Court – David M. Cook – has more than 35 years of experience in the employee benefits area, including numerous class actions, and has lectured and given training programs in employee benefits and ERISA law throughout the United States.  (Supp. Cook Decl. ¶¶ 3-7, 9-10.)  Mr. Cook and the associates who have worked with him in this matter are fully qualified to serve as class counsel.

### (2)   Rule 23(g) Requirements

5.   The appointment of Mr. Cook and his associates as Class Counsel satisfies the considerations specified in Rule 23(g).  Mr. Cook and his associates have thoroughly analyzed and investigated potential claims in this action (*see* FOF17); they have extensive experience with litigation of this nature and are knowledgeable with respect to the applicable law (*see* Supp. Cook Decl. ¶¶ 3-7, 9-10;); and they have committed adequate resources to the representation (*id.* ¶ 11.)

### (3)   Rule 23(b) Requirements

6.   Having concluded that the requirements of Rule 23(a) are satisfied, the Court also concludes that this case is properly certified under Rule 23(b)(2), because "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting o the class as a whole."  Fed. R. Civ. P. 23(b)(2).  Similar retiree benefit cases regularly are certified under Rule 23(b)(2).

18

*See IUE-CWA,* 238 F.R.D. at 593 and cases cited therein. *See also UAW v. Gen. Motors Corp.,* 497 F.3d 615, 625 (6th Cir. 2007) ("little discussion" is required to support the conclusion that a case concerning modification of retiree benefits is properly certified under subsection (b)(2)).

### C.  <u>Adequacy of Notice</u>

7.    Notice to the members of a class should be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *General Motors*, 497 F.3d at 629.  The form of the notices in this case and the manner in which notice was provided satisfy that standard, as the Court determined in its order of May 5, 2015.  As in *IUE-CWA,* 238 F.R.D. at 593, the notices "explained the background and basis of this litigation, summarized the terms of the proposed settlement, including the right of Class Members to object, and even included a complete copy of the Settlement Agreement;" and transmission of notice by mailing and publication was appropriate and sufficient. *Id.*

### D.   <u>Final Approval of the Class Settlement</u>

#### (1)    <u>Criteria for Approval</u>

8.    A court should approve a class settlement if, following a hearing, the court determines that the settlement "is fair, reasonable and adequate." Fed. R. Civ. P. 23(e)(1)(c).  In *UAW v. General Motors* and *IUE-CWA*, the Sixth Circuit and

this Court described the principles that guide that inquiry in a case of this nature.

"[F]ederal policy favor[s] settlement of class actions," *UAW v. Gen. Motors*, 497 F.3d at 632, and a court should evaluate a proposed class settlement in light of that policy, *IUE-CWA,* 238 F.R.D. at 593.  "[F]actors relevant to the court's evaluation of a class settlement are (i) 'the likelihood of success on the merits weighed against the amount and form of relief offered in the settlement; (ii) the risks, expense, and delay of further litigation; (iii) the judgment of experienced counsel who have competently evaluated the strength of their proofs; (iv) the amount of discovery completed and the character of the evidence uncovered; (v) whether the settlement is fair to the unnamed class members; (vi) objections raised by class members; (vii) whether the settlement is the product of arm's length negotiations as opposed to collusive bargaining; and (viii) whether the settlement is consistent with the public interest.'"  *Id.* at 594 (quoting *UAW v. Gen. Motors*, No. 05-cv-73991-DT, 2006 WL 891151, at *14 (E.D. Mich. Mar 31, 2006)).  In determining whether to approve the settlement, "the court must respect the parties' compromise and may not 'substitute his or her judgment for that of the litigants and their counsel.'"  *Id.* at 594 (quoting *Berry v. Sch. Dist.,* 184 F.R.D. 93, 97 (W.D. Mich. 1998)).

(2)      **Application of the Criteria**

(i) and (ii)  **Likelihood of Success Weighed against the Benefits of the Settlement and the Risks of Litigation**

9.      "[T]he likelihood of success on the merits weighed against the amount and form of relief offered in the settlement," *id.*, considered in light of "the risks, expense, and delay of further litigation," *id.*, argues strongly for approval of the proposed settlement.  It is neither necessary nor appropriate for the Court to attempt to determine what would have been the outcome had the case been litigated.  *See id.* at 595-96 and cases cited therein.  But litigation of retiree benefit claims involves considerable legal uncertainty, as evidenced, for example, by the Supreme Court's recent reversal of the Sixth Circuit in *M&G Polymers v. Tackett,* 135 S. Ct. 926 (2015).  What is more, in *Tackett* the Sixth Circuit held, in a ruling as to which review was not sought, that even though the retirees had a vested right to health benefits, it was permissible for the employer to make changes – one of which was an eightfold increase in the maximum amount a family could be required to pay each year – because the court found the changes to be "reasonable."  *Tackett v. M&G Polymers,* 733 F.3d 589, 601 (6th Cir. 2013).  Even before the Supreme Court's decision in *Tackett*, the caselaw in the Sixth Circuit regarding the permissibility of changes in retiree benefits that an employer defends as "reasonable" was unsettled.  *Compare United Steelworkers v. Kelsey-Hayes Co.,* 750 F.3d 546, 551, 554 (6th Cir. 2014) with *Tackett*, 733 F.3d at 601.  And it

remains to be seen how the Supreme Court's decision may affect the law in this area. Thus, the claims in this case involve significant legal risk to the Class.

10.   In addition, to the extent that retiree health benefits are dependent on an employer's ability to pay, they are subject to financial risk. In this case, with the UAW's declining dues income base, that is a significant consideration. (Supp. Cook Decl. ¶ 16.)

11.   Courts have recognized that an adequately funded VEBA offers "substantial advantages to [a retiree] Class." *Redington v. Goodyear Tire & Rubber Co.*, No. 07-cv-1999, 2008 WL 3981461, at *12 (N.D. Ohio Aug. 22, 2008). A VEBA is administered by fiduciaries who are "required to bring [their] expertise to bear in discharging [their] fiduciary duty to act 'solely in the interest of the [VEBA] participants and beneficiaries' as a group." *Id.* at 13 (quoting 29 U.S.C. § 1104(a)(1)). *See also Mack Trucks, Inc. v. UAW,* No. 07-3737, 2011 WL 4402136, at *5 (E.D. Pa. Sept. 22, 2011) ("The VEBA Trust will be administered by an independent committee that is experienced and devoted to furthering the retirees' interests"). And, to the extent that benefits will be "pre-funded and will no longer depend on [the employer's] financial performance," *Redington,* 2008 WL 3981461 at *12, "the class members will benefit from a secure and independent source of funding for future retiree health care benefits that are not

directly linked to the economic and business success of [the employer]." *Mack*, 2011 WL 4402136 at *5.

12.    VEBA settlements have been approved as reasonable even where, as is typically the case, the funding provided in the settlement is projected to fall short of enabling benefits to be continued without reductions. *See UAW v. Ford Motor Co.,* No. 05-74730, 2006 WL  1984363, at *23 (E.D. Mich. July 13, 2006), *aff'd, UAW v. Gen. Motors*, 497 F.3d 615 (6th Cir. 2007) (settlement called for a 13% reduction in benefits); *Mack*, 2011 WL 4402136, at *5 n.7 (projecting that if the VEBA were to earn an annual return of 7.5% on its assets it could provide benefits at 85% of the then current level (which included negotiated benefit reductions)); *Bailey v. AK Steel Corp.*, No. 06-cv-468, 2008 WL 495539 at *6 (S.D. Ohio Feb 21, 2008) (projecting that the VEBA would be able to provide benefits at 70% of the previous level), *aff'd sub nom.  Bailey v. White*, 320 F. App'x 364 (6th Cir. 2009).  The proposed settlement in this case, in contrast, provides for funding that is projected, based on reasonable assumptions, to enable the VEBA to provide benefits at the *full* current level for the lives of the Class Members, with most of the funding being contributed at the outset and the remainder over fifteen years. *See* FOF26 .  It cannot be guaranteed that the VEBA Committee will never find it necessary or appropriate to make some reductions in benefits.  But "[t]he absence of a guarantee is understandable because the underlying legal debate turns in part

on whether a guarantee is required." *UAW v. Gen. Motors,* 497 F.3d at 633. If the case were not settled, Class Members' benefits would be subject to significant legal and financial risk. The proposed settlement eliminates the legal risk, and, by largely prefunding the benefits consistent with reasonable actuarial assumptions, the settlement greatly reduces the financial risk to which the benefits presently are subject. Given the inherent advantages to the Class of a VEBA, and the sufficient level of funding provided by the settlement, the settlement would be fair and reasonable even if the risks to the Class in the absence of a settlement were substantially less than is in fact the case.

### (iii)  **Judgment of Counsel**

13.     Also weighing in favor of approval of the proposed settlement is "the judgment of experienced counsel who have competently evaluated the strength of their proofs." *IUE-CWA,* 238 F.R.D. at 594. Class counsel are highly experienced; they have carefully assessed the proposed settlement; and they have cogently explained why they believe the settlement to be in the best interests of the Class. (Supp. Cook Decl. ¶¶ 16-22.) In addition, OPEIU and Staff Council, who have represented UAW employees for many years, are familiar with the matters at issue and have a strong interest in defending the benefits that are available to UAW retirees. Their agreement to the settlement reflects their determination that the settlement is in the best interests of their retired members.

### (iv)  Extent of Factual Investigation

14.     Turning to the fourth consideration identified by this Court in *IUE-CWA,* although formal discovery was not conducted in this case, plaintiffs OPEIU and Staff Council are fully knowledgeable of the retiree benefit arrangements that have been adopted over the years by the UAW, and Class Counsel has had the benefit of their knowledge, as well as of a thorough review of the relevant documents.  In addition, Class Counsel, as well as OPEIU and Staff Council, have thoroughly examined the UAW's financial condition, and have received expert advice regarding the adequacy of the VEBA funding provided by the proposed settlement.  *See* FOF 13, 17.

### (v)  Fairness to Unnamed Class Members

15.     The fifth factor – "whether the settlement is fair to the unnamed class members," *IUE-CWA,* 238 F.R.D. at 594 – clearly is satisfied here, as the settlement provides no special benefits for the class representatives beyond what the unnamed Class Members will receive.

### (vi)  Absence of Collusion

16.     This settlement is "the product of arm's length negotiations as opposed to collusive bargaining."  *Id.*  "If the settlement agreement itself is fair, reasonable and adequate" – as the Court has found to be the case here – "then the court may assume that the negotiations were proper and free of collusion."  *Id.* at

25

599.  It is clear that the Unions and Class Counsel bargained long and hard to achieve the settlement, *see* FOF 10-18, and there is no reason to doubt the parties' attestations regarding the arms-length nature of the negotiations.  (Supp. Cook Decl. ¶ 14.)

### (vii)  <u>Consideration of Objections</u>

17.     Only one class members filed an objection to the settlement.  "This extremely minimal level of opposition represents significant support by the Class for the Settlement Agreement," *IUE-CWA,* 238 F.R.D. at 600, and "is an indication of [the] settlement's fairness," *id*. (quoting *Robinson v. Ford Motor Co*., No. 1:04-cv-00844, 2005 U.S. Dist. LEXIS 11673, at *17 (S.D. Ohio June 15, 2015)).  *See also id.* (citing *Stoetzner v. U.S. Steel Corp*., 897 F.2d 115, 118-19 (3d Cir. 1990) for the proposition that "objections by only 10% of the class 'strongly favors settlement'").

18.     The Court has carefully considered the objection and finds that it does not alter the Court's conclusion that the settlement is "fair, reasonable and adequate."  Fed. R. Civ. P. 23(e)(2).  The objector is a retired UAW employee who receives his primary health benefits from the "Big 3 VEBA" covering retired employees of General Motors, Ford and Chrysler, with the UAW retiree benefit program constituting his secondary source of benefits.  (*See* Conroy Decl. (Doc. # 10-8) ¶ 6 (explaining how the UAW program supplements the programs of other

26

former employers such as the Big 3)).  He states that he retired in early 2010 because it had been announced that benefits for employees who retired after that date would be reduced, and he wanted to be able to receive the higher benefits applicable to employees who retired prior to early 2010.  (Doc. # 26.)  In the hearing, the objector explained that his concern about the settlement arose from his understanding that the New VEBA would not continue to supplement the benefits he receives from the Big 3 VEBA.  In response, the parties explained that the settlement does *not* provide that this individual's benefits will be reduced to the levels that went into effect in 2010 for employees who did not retire before that date, nor does it provide that benefits provided by another former employer will no longer be supplemented.  On the contrary, Section 10.02 of the Trust Agreement provides that the benefits to be provided by the VEBA under the new benefit plan will be the same as were provided before the settlement, unless the Committee decides at some point to modify benefits pursuant to its authority under Section 10.02.

19.     If the objector is assuming that, absent a settlement, his benefits never could be modified, it suffices to note that the Plaintiffs share the view that the existing benefits are vested, *see* Complaint ¶¶ 57-58; Settlement Agreement at p. 8, but they determined nonetheless that the legal and financial risks inherent in the current arrangement, where benefits are provided by the UAW rather than by a

27

well-funded independent VEBA, are such that the proposed settlement is in the best interests of UAW retirees. Thus, the concern raised by the objection "has already been weighed in [the Plaintiffs'] decision to compromise." *IUE-CWA,* 238 F.R.D. at 601. The objection points to nothing that would call that decision into question.

20.     The objector also expressed his desire that at least one of the members of the VEBA Committee should be a retired UAW employee. The parties noted that one of the initial members of the Committee is in fact a UAW retiree; and the Trust Agreement provides that, while practicable, it will remain the case that at least one member will be a UAW retiree. *See* Trust Agreement (Doc. #19-1) § 9.01(b); *see also* § 9.01(c), (d).

21.     Thus, the objection provides no basis for concluding that the settlement is not fair, reasonable and adequate. On the contrary, the objector appeared to be satisfied with the parties' statements at the hearing concerning the manner in which the settlement would apply to him.

### (viii)  The Public Interest

22.     Finally, "the settlement is consistent with the public interest." *IUE-CWA,* 238 F.R.D. at 594. As noted above, federal policy favors the settlement of class actions. Because the settlement is fair and reasonable, approval plainly is in the public interest.

### Rule 23(e)(3) Statement

23.     The parties have satisfied the requirement of Rule 23(e)(3) that they file a statement identifying any agreement made in connection with the proposed settlement.  The June 2014 MOU (*see* FOF 14) was identified by the parties in their joint motion for preliminary approval of the proposed settlement (Doc. #10 at 6), and in the mailed notice (Doc. # 19-1 at 6).

### E.     Class Counsel Fees

24.     The provisions of the Settlement Agreement regarding Class Counsel's fees and regarding the reimbursement of certain expenses incurred by OPEIU and Staff Council are reasonable, and attest to the non-collusive nature of the negotiations.

25.     Under Section 12 of the Settlement Agreement, Class Counsel is to receive "reasonable, non-duplicative attorney and professional fees and expenses based on hours worked in negotiating and obtaining court approval of the Settlement Agreement (not to include any upward adjustments, multipliers, risk enhancements, success fee, completion bonus or rate premiums)."  "In addition, to the extent mutually agreed between the UAW and Class Counsel, the UAW will reimburse Class Counsel for de minimis fees incurred after the Implementation Date."

26.     Class Counsel's amended motion for an award of attorneys' fees and expenses requested a total of $302,909.70 for fees and expenses incurred through May 31, 2015.  (Doc. # 25) ("Amended Fee Motion").  On June 25, 2015, Class Counsel and the UAW submitted a Joint Proposal for resolution of the Amended Fee Motion, in which they stated that they had agreed to an award of $150,240.50 for the period covered by that motion.  (Doc. # 29.)

27.     The Joint Proposal states that, in agreeing to accept a substantially lower award than the Amended Fee motion requested, "Class Counsel recognizes the UAW has encountered significant financial difficulties, which form the background for the Settlement Agreement establishing the New VEBA proposed in the litigation; and, payment of fees at rates sought in the Amended Fee Motion would impact that financial condition."  The Joint Proposal states that, "[i]n addition, Class Counsel is aware that the market rate for fees as presented in the Amended Fee Motion may not reflect attorneys' fees rates historically paid by labor organizations in general, and the UAW in particular."

28.     In view of the detailed information regarding hourly rates and the time spent on this matter that was submitted by Class Counsel in support of the Amended Fee Motion, it is clear that the amount proposed by the UAW and Class Counsel in their Joint Proposal is both "reasonable" and "authorized by … the parties' agreement," as required by Rule 23(h).  The Court therefore will award the

requested $150,240.50 for the period covered by the Amended Fee Motion. An

award of fees and expenses for work subsequent to that period will be determined

upon the submission by Class Counsel of a supplemental petition.

### F. Reimbursement of Expenses of Staff Council and OPEIU

29. Section 12 of the Settlement Agreement also provides that, "[u]pon

final court approval of the … settlement, the UAW will reimburse Staff Council

and OPEIU for reasonable, non-duplicative legal, actuarial, and financial

consultant fees incurred in negotiating and obtaining court approval of the

Settlement Agreement and MOU." The Court finds that such reimbursement,

which will not affect the funding of the VEBA or any other benefits or obligations

under the settlement, is reasonable and proper under Rule 23(h). In addition, the

Court finds that these payments by the UAW to OPEIU and Staff Council are

permitted by LMRA Section 302(c)(2), 29 U.S.C. § 186(c)(2), as they are made "in

compromise, adjustment, settlement, or release of [a] claim, complaint, grievance

or dispute in the absence of fraud or duress."

## III. ORDER

On the basis of the foregoing Findings of Fact and Conclusions of Law, it is

hereby ORDERED as follows:

1. The Settlement Agreement (Doc. # 19-1), including the Trust

Agreement that is Exhibit A thereto, is finally approved in its entirety and is

incorporated into this Order.  The Joint Motion for Approval of Class Settlement

**(Doc. No. 34)** is GRANTED.

2.     Upon satisfaction of all conditions provided in the Settlement

Agreement, the Settlement shall be binding on the Parties and all members of the

following Class, which has been certified pursuant to Fed. R. Civ. P. 23(b)(2):

> 1) **Union Retirees Who Retired Prior to Ratification:**
> UAW Employees who, prior to June 2, 2014, had retired
> from the UAW with eligibility for Retiree Medical
> Benefits under the Prior UAW Plan, and who at the time
> of their retirement were in a bargaining unit represented
> by a Union, and their spouses, surviving spouses, and
> dependents eligible for Retiree Medical Benefits under
> the Prior UAW Plan; and
>
> 2) **Surviving Spouses and Dependents of Union**
> **Employees Who Died Prior to Retirement and**
> **Ratification:**  Surviving spouses and dependents entitled
> to Retiree Medical Benefits under the Prior UAW Plan as
> a consequence of the death of an employee who died
> prior to retirement from the UAW and prior to June 2,
> 2014 while still a UAW employee in a bargaining unit
> represented by a Union, but in all cases only if the
> surviving spouse or dependent otherwise meet the
> requirements of the Prior UAW Plan for Retiree Medical
> Benefits; and
>
> 3) **Non-Union Employees and Retirees:**  All UAW
> employees, whether or not retired on June 2, 2014, who
> are eligible for Retiree Medical Benefits under the terms
> of the Prior UAW Plan and who (i) if not retired, were
> not in a bargaining unit represented by a Union as of June
> 2, 2014 or (ii) if retired at the time of their retirement
> from the UAW prior to June 2, 2014 were not in a
> bargaining unit represented by a Union and, in both
> cases, their spouses, surviving spouses, and dependents

eligible for Retiree Medical Benefits under the Prior
UAW Plan; and

**4) Surviving Spouses and Dependents of Non-Union
Employees Who Died Prior to Retirement:**  Surviving
spouses and dependents who, as of June 2, 2014, are
entitled to Retiree Medical Benefits under the Prior
UAW Plan as a consequence of the death of an employee
who died prior to retirement from the UAW and prior to
June 2, 2014 while a UAW employee not in a bargaining
unit represented by a Union, but in all cases only if the
surviving spouse met the requirements of the Prior UAW
Plan for Retiree Medical Benefits.

3.      This order and the Settlement Agreement shall permanently resolve

the dispute that is the subject of the Complaint in this case.  All claims of the

Plaintiffs and of all members of the class that were or could have been alleged in

the Complaint are dismissed with prejudice.

4.      The New VEBA and the New Plan, which are subject to ERISA, shall

be administered by the Committee, in accordance with the Trust Agreement

(Exhibit A to the Settlement Agreement).  The initial Independent Members of the

Committee and the initial Chair of the Committee are hereby appointed as stated in

the Notice of Selection of Independent VEBA Committee Members that has been

filed by the parties.

5.      On the Implementation Date, the New VEBA shall assume all

responsibilities and liabilities of the UAW Plan associated with the provision of

Retiree Medical Benefits for the Covered Group for claims and other obligations

incurred on or after the Implementation Date, subject to the Committee's authority to modify benefits pursuant to Section 10.02 of the Trust Agreement.

6.    The UAW shall not be responsible for, nor in any way be deemed to guarantee, the asset returns of the New VEBA, or any actions taken or not taken by the Committee.

7.    For fees and expenses incurred through May 31, 2015, Class Counsel will be awarded $150,240.50. An award for work subsequent to that date will be determined upon the submission by Class Counsel of a supplemental petition. The Amended Motion for Attorney Fees **(No. 25)** is GRANTED as agreed to by the parties. The Motion for Attorney Fees **(No. 23)** and the Motion to Strike Motion for Attorney Fees **(No. 24)** are MOOT.

8.    Having approved the provisions of the Settlement Agreement regarding reimbursement of certain expenses incurred by OPEIU and Staff Council, the Court directs those unions to submit by motion their requests for reimbursement, which the Court will address in a subsequent order.

9.    As provided in Section 21 of the Settlement Agreement, the Court will, subject to dispute resolution procedures set forth in the Trust Agreement, retain exclusive jurisdiction to resolve any disputes relating to or arising out of or in connection with the enforcement, interpretation or implementation of the Settlement Agreement.

10.     Judgment will be entered in accordance with the terms and

requirements of this order.

s/Denise Page Hood
Denise Page Hood
United States District Judge

Dated: November 6, 2015

I hereby certify that a copy of the foregoing document was served upon counsel of
record on November 6, 2015, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry
Case Manager